WALTER D. CHASE *et ux.* *vs.* EDGAR B. HURDIS *et al.*

JUNE 14, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. Defendant seeks a new trial after a $14,150 verdict for plaintiff for money had and received. The trial court declined to disturb the verdict, ruling that there was sufficient evidence to support it and that substantial justice had been done. In addition to the claim that the verdict is not supported by the evidence, defendant presses several exceptions to rulings made in the course of the trial.

Exceptions 1, 2, 3 and 5 relate to the refusal of the court both before and at the trial, to quash the depositions taken in Florida of the witness Dr. Heaton, now deceased. It was claimed that the stenographic report of Heaton's evidence before the commissioner was inaccurate and that some of his testimony was omitted. The defendant had no means of knowing of the omissions and no way of taking exception thereto until the commissioner's report was written out and the transcript filed with this court. We think the motions to quash made prior to and at the trial were made in due season. *Brumbaugh System Inc.* v. *Prov. Live Poultry Co.*, 47 R. I. 39, does not conflict with this view. The holding in that case that objections to evidence may not be first-

taken in the Superior Court relates to objections which can be but are not noted before the commissioner. It is clear that the completeness of the stenographic report was seriously open to challenge and it is impossible to know how incomplete the transcript may be. We agree with the Superior Court that ordinarily a deposition so defectively taken, as this appears to have been, should be retaken but we think the action of the trial court in admitting this deposition together with the evidence of others present that certain testimony was omitted was a proper exercise of the court's discretion and was the only fair way to protect the interests of all parties. To quash the deposition would have deprived plaintiffs of their only evidence to establish what the jury might find to be disloyalty of defendants as their brokers, and plaintiffs' task was the peculiarly difficult one of uncovering a concealed fraud. These exceptions are overruled.

Exception 6 is not pressed.

Exceptions 7, 8, 9, 10, 11, 12, 13 and 14 relate to alleged prejudicial remarks of the trial justice before the jury. All the exceptions are without merit, need no discussion and are overruled.

Exception 15 is to the ruling of the trial court striking out certain words from the answer of witness Hurdis to a question relating to Dr. Heaton at the time his deposition was taken. The question was, "What appeared to be his physical condition?" After an answer of some detail witness added, "He seemed bewildered." Such an expression might be the witness' way of describing what he saw or it might be his conclusion concerning the doctor's mental condition. The words occurred at the close of an answer containing statements of the surroundings and physical characteristics of the doctor. They were susceptible to the interpretation placed upon them by the court, that they were conclusions. While we might have been (3) disposed not to strike them out, the court clearly gave its reasons for so doing and was in a better position than we

to be certain of witness' meaning. If the court's interpretation of the witness' equivocal language was erroneous, defendants were in a position at once to clear it up. We are not certain that the court erred but, if so, we think defendants can take nothing thereby. Exception 15 is overruled.

Exceptions 4 and 16 related to the court's allowance of increase of ad damnum before trial and after return of the verdict exceeding the ad damnum. The first amendment was clearly proper and in view of our conclusion on the weight of the evidence the second requires no consideration.

Defendants' exception 17 is that the verdict is not supported by the evidence. We have carefully studied the testimony. A detailed statement of it would be tedious. An analysis shows that to support the verdict two facts had to be established: (1) that Dr. Heaton reduced the obligation of the Chases from $40,000 to $30,000; (2) that $10,000 of the Chases' money came into defendants' possession.

Defendants' obligation as brokers arranging for the transfer of the mortgage was to exercise good faith toward the Chases. *Berry* v. *French*, 49 R. I. 128. This required giving information to them of any reduction made to them by Dr. Heaton.

The evidence oral and documentary, if Mr. Hanley's testimony be accepted, supports the verdict as to $5,000 which came into defendants' hands in October, 1919, directly by check (Exhibit B) from Kirk to their order indorsed by them to Hanley, attorney, and bearing his indorsement. Hanley says that Conca received this money and that Hanley's indorsement was only for identification purposes. Kirk placed $15,000 in defendants' hands to reduce the Chase mortgage note from $40,000 to $25,000 and the evidence warrants the conclusion that defendants secured a concession from Dr. Heaton paying him $10,000 and keeping $5,000 for themselves, although they got a receipt (Exhibit H) from the doctor to the Chases for $15,000 on the mortgage indebtedness. Relying upon this advance-

ment of $15,000 by Kirk the Chases were induced to execute a second mortgage to Kirk for $15,000. We think the jury had evidence to justify a finding that defendant made a secret profit of $5,000 at plaintiffs' expense.

The evidence of defendants' wrongful receipt of another $5,000 in October, 1920, is far from convincing. Defendants' liability is predicated on the cashing of the Chase $5,000 check (Exhibit 5) and keeping the same for their own use after getting, without Kirk's knowledge, a transfer of the $25,000 mortgage by paying Dr. Heaton the $20,000 placed in their hands by Kirk. There is some confusion in the testimony. The check itself bears no evidence that it passed through these defendants' hands. The doctor held a note (Exhibit 2) upon which $25,000 was due and indorsed it to Kirk receiving therefor $20,000 of Kirk's money. The latter amount with the $5,000 check of Chases to Kirk's order (Exhibit 5) was said by Kirk to have made up the $25,000 for which he believed the doctor indorsed the note to him. Kirk has no explanation why the $5,000 which he supposed was paid by the Chase check was not indorsed as a payment on the principal of $25,000. In addition the $15,000 mortgage note held by Kirk shows in Kirk's writing at this time a credit by Kirk of $5,000 on the principal. This indorsement Kirk can not explain. Indeed, after admitting it in direct examination he denied in cross-examination that it was his writing, but we think the testimony clearly established the writing as his,—nor does the $5,000 check (Exhibit 5) bear other than Kirk's indorsement. It is difficult to believe that Kirk turned this check over to defendants and did not get the benefit of it. For purposes of defendants' liability it is immaterial whether it was applied on the $15,000 or the $25,000 note. If either was done the money was not secretly appropriated by defendants to their own use. Kirk's testimony too sharply conflicts with the documentary evidence readily to support a finding that defendants collected and kept the money on the Chase check for $5,000 to Kirk.

The remaining possibility by which defendants might be liable would arise if Dr. Heaton gave to Conca for the Chases a $5,000 credit at the time of the transfer of the $25,000 note which credit was concealed from Kirk and the Chases and somehow inured to defendants' benefit. The only witness now living who might know what took place between the doctor and Conca at the time of the transfer of the $25,000 mortgage was not asked the question. Kirk sat in Hanley's office waiting while the doctor, Conca and Hanley elsewhere completed the transaction and executed the papers. No evidence is offered that Kirk shared with defendants in any fraudulent practice upon the Chases and we are not entirely satisfied that even though the doctor received but $20,000 in this settlement he did anything to diminish the amount of the Chases' obligation of $25,000. The note bears no such evidence although here our attention is called to the fact that the doctor formerly gave a $15,000 receipt when he actually received but $10,000. In that instance, however, $5,000 was traceable directly through defendants' hands. Nothing similar is here traceable, if we do not accept Kirk's story as to delivery by him of Exhibit 5 to defendants. The doctor's conduct would be consistent with a sale of the note for $20,000. In his mental condition he might honestly have believed that when he got only $30,000 on the total $40,000 of indebtedness he had given $10,000 to the Chases. Whatever the doctor may have thought he did at the time of the transfer of the $25,000 note, we fail to find satisfactory evidence that defendants personally received anything from the transaction, and unless they did plaintiffs' action can not lie for money had and received.

We think the issue in this case was not as several times stated by the court during the trial to be simply how much did Dr. Heaton receive; it was rather, how much did defendants get which they kept from plaintiffs, as was correctly stated in the charge. We are not satisfied upon careful consideration of the record that plaintiffs established defendants' liability for the second $5,000, particularly in

view of the above statements of the court as to the only issue and we consequently can not give to the court's approval of the verdict the weight which it might otherwise have.

We are therefore of the opinion that the evidence sustains the verdict only as to the $5,000 received by defendants in 1919 and that a remittitur should be made of the portion of the verdict based upon the alleged receipt of the $5,000 in 1920.

All exceptions other than Exception 17 are overruled. The 17th exception is sustained in part and a new trial is granted unless the plaintiffs within fifteen days after the filing of this opinion shall file with the clerk of the Superior Court a remittitur of all of the verdict in excess of $5,000 plus interest at 6% from October 15, 1919, to the time of the verdict, $2,225. If a remittitur of all of said verdict in excess of $7,225 be filed in the Superior Court that court is directed to enter judgment on the verdict as reduced by the remittitur.

*Quinn, Kernan & Quinn, Michael De Ciantis,* for plaintiffs.
*Arthur Cushing,* for defendant.